## JACK MONTGOMERY V. JULIA AMSLER ET AL.

### Decided October 21, 1909.

**1.—Brokers—Division of Commissions.** ·

Where a broker or land agent has the agency to sell a certain tract of land and agrees with another broker to divide with him the commissions or compensation for effecting a sale in the event such other broker produces a purchaser for the land, said brokers are not partners in a legal sense so that either would be bound by the acts of the other, or that notice to one would be notice to the other. Evidence, as to the relation of brokers to each other in a sale of land, considered and held insufficient to establish a partnership.

**2.—Same—Defect in Title—Knowledge of Broker—Evidence.**

A broker is not entitled to a commission on the purchase price of land when the sale fails because of a defect in the title, of which defect the broker had notice or was charged with notice at the time he entered into the contract to sell the land. Evidence considered, and held sufficient to put a broker upon notice that the title he undertook to sell was defective.

**3.—Title—Representation.**

A statement by an owner of land that he had owned it thirty or forty years and for that reason he thought the title was good, was not equivalent to a representation that the title was in fact good.

**4.—Estoppel—Pleading.**

In a suit by a land agent for commissions on a sale of land, the defendant answered in substance that the plaintiff was estopped from claiming more than fifty cents per acre because after the purchaser, produced by plaintiff, had offered fifty cents an acre more than the price stipulated for by defendant, and after said offer had been rejected by defendant and before defendant had himself sold the land at a better price, the plaintiff demanded of defendant fifty cents per acre as his compensation under their contract, and defendant was thereby led to believe that plaintiff would demand no more than that amount in full of his claim. Held, the answer was not good as a plea of estoppel and an exception thereto should have been sustained.

**5.—Broker—Contract—Sale by Owner.** ·

When a tract of land is sold by the owner himself upon terms different from those specified in his contract with a land agent, the agent would not be entitled to receive the compensation or commission named in the contract. The contract could not be the basis of his action.

**6.—Same—Breach by Owner.**

Upon the wrongful refusal by the owner to complete a sale of land made by an agent in accordance with the terms of a contract between them, the owner thereupon became liable to the agent in the amount he would have been entitled to under the contract if the owner had ratified the sale, and the rights of the agent would not be changed or affected by a subsequent sale made by the owner himself upon different terms from those contained in the contract between the owner and the agent.

**7.—Appeal—Refusal of Charge—Assignment of Error.**

Where an assignment of error is based upon the refusal of the court to give a special charge, and the charge is not copied or referred to in the statement following the assignment, the assignment will not be considered. And so, when the record does not show that appellant made any request in the trial court that the court instruct the jury as indicated in an assignment of error.

**8.—Trial—Submission of Case—Harmless Error.**

Where an appellant has judgment for the full amount to which he is

entitled under the pleading and the evidence, any error in the submission of the case to the jury would not be cause for reversal.

**9.—Broker and Principal—Contract—Termination by Principal.**

Although the owner of land stipulated in his contract with a land agent that he, the owner, should have the right to terminate the agency at any time, such right could not be exercised by the owner to the prejudice of the agent after the agent had found and produced a purchaser ready, able and willing to buy the land on the terms specified in the contract of employment.

Appeal from the District Court of Waller County. Tried below before Hon. Wells Thompson.

*R. Hannay* and *Williams & Reid,* for appellant.—The court erred in admitting the letter from Colby to Amsler in evidence, because it does not show or tend to show that plaintiff had either actual or constructive knowledge of defects in defendants' title that existed at the time of writing said letter by Colby. Brown v. Brown, 61 Texas, 49, 50; Henderson v. Pilgrim, 22 Texas, 476, 477; Wethered v. Boon, 17 Texas, 150, 151; Wilson v. Williams, 25 Texas, 66; 21 Am. & Eng. Ency. of Law, 2d ed., p. 589.

The relation of an associate broker to his principal broker is not that of a co-partner, or such as to make imputable to the principal broker constructive knowledge of the existence of facts of which the associate broker had notice. Bauer v. Wilson, 79 S. W., 364; Watkins L. & M. Co. v. Thetford, 96 S. W., 73; Bogart v. McWilliams, 31 S. W., 434; 22 Am. & Eng. Ency. of Law, 2d ed., pp. 26, 27, 28; 8 Current Law, pp. 1262-1264.

Evidence of a statement made by the principal to the agent some time prior to the making of his contract with the agent, to the effect that some other person claimed to have found defect in his title, is not admissible to defeat the agent's right to commissions, where the principal admits that in the same conversation he assured the agent that his title to the land was good. Conklin v. Krakauer, 11 S. W., 117; Wilson v. Clark, 79 S. W., 649; Parks v. Willard, 1 Texas, 354; College Park Elec. Belt Line v. Ide, 40 S. W., 66.

Where plea of equitable estoppel fails to state the necessary elements constituting equitable estoppel, special exception directed to said plea for said failure should be sustained by the court. Texas Banking Co. v. Hutchins, 53 Texas, 67; Galveston, H. & S. A. Ry. v. Johnson, 11 S. W., 1116; Short v. Short, 33 S. W., 684; Bynum v. Preston, 6 S. W., 429; Neal v. Minor, 26 S. W., 883.

Where the facts are undisputed that the principal accepted a purchaser procured by the agent, with whom he entered into a binding contract for the sale of the land, he will not be permitted to escape liability to the agent on the ground that he revoked the agency after the purchaser had been produced. Peach River Lbr. Co. v. Montgomery, 115 S. W., 88; Watkins' Land & Mtg. Co. v. Thetford, 96 S. W., 72; Conklin v. Krakauer, 11 S. W., 118; Blumenthal v. Goodall, 89 Cal., 251; Heaton v. Edwards, 90 Mich., 500; Martin v. Holly, 104 N. Car., 36; Knox v. Parker, 2 Wash., 34; Meachum on Agency, pars. 967, 968.

Where an agent, acting under a contract with his principal, procures a purchaser with whom the principal closes a sale on terms different

from those the agent is authorized to make, if the agent was the procuring cause of the sale consummated, it is in law his sale, and he can recover upon his contract. Peach River Lbr. Co. v. Montgomery, 115 S. W., 88-89; Graves v. Baines, 14 S. W., 256; Byrd v. Frost, 29 S. W., 46; Bowser v. Field, 17 S. W., 46; Brackenridge v. Claridge, 42 S. W., 1006; Harrell v. Zimpleman, 66 Texas, 294; Conklin v. Krakauer, 11 S. W., 118; Blair v. Slosson, 66 S. W., 113; 4 Am. & Eng. Ency. of Law, 697.

Where the price obtained by the principal differs from the price made to the purchaser by the broker, if the broker's efforts are the procuring cause of the sale, his right to compensation is upon the price obtained. Brackenridge v. Claridge, 42 S. W., 1006; Gelatt v. Ridge, 23 S. W., 884; Hahl v. Wickes, 97 S. W., 838; Bryan v. Abert, 3 App. Cas. (D. C.), 180; Corbel v. Beard, 92 Iowa, 360; Wood v. Wells, 103 Mich., 320; Henderson v. Mace, 2 Mo. App. Rep., 1009.

*J. D. Harvey* and *Keet McDade*, for appellee.—Where the principal, in the contract of employment of a broker to sell land at a given price, expressly reserves the right to withdraw the terms of such contract and terminate such agency at any time, he may rightfully exercise such right of withdrawal at any time before a sale is complete. Appellee in the contract of employment of appellant as agent, if any there was, having expressly reserved the right to withdraw the price of $2.50 per acre, and terminate appellant's agency at any time, and the evidence showing that appellee, acting in good faith, exercised such right and withdrew such price and terminated such agency, before a sale of said lands was complete, appellant is not entitled to recover compensation for his services from appellee. And the court erred in peremptorily charging a verdict against appellee as it did. Kiam v. Turner, 52 S. W., 1046; Hotchkiss v. Gretna Co., 36 La. Ann., 517; McCarron v. McNulty, 7 Gray (Mass.), 141; Walker v. Tirrell, 3 Am. Rep., 352; Durkee v. Vermont Cent. Ry. Co., 29 Vt., 127; Sibbald v. Bethlehem Iron Co., 38 Am. Rep., 446; 4 Am. & Eng. Ency. Law (2d ed.), 973; 9 Cyc., 618; Mechem on Agency, sec. 968 (latter portion).

Although it be established that appellee employed appellant as her agent to sell her land, under contract to pay him for his services all sums in excess of $2.50 per acre for which the land should be sold, as alleged, the appellee expressly reserved the right in such contract of employment to withdraw such price of $2.50 per acre, and terminate said contract at any time, and the evidence showed that same was withdrawn and terminated by appellee before a sale was completed and before appellant's commission accrued. Appellee having thus withdrawn such price and terminated such contract before the sale of such lands was completed, appellant could lawfully recover from appellee no more than the reasonable value of his services rendered prior thereto, together with such reasonable expenditures he may have made in the furtherance of the business of his employment. The court therefore erred to appellee's prejudice in peremptorily instructing a verdict against appellee, as it did, for the sum of $861 2/3 (the same being fifty cents per acre of the amount of land sold), that being a greater amount than he was entitled to recover. Dulaney v. Page Belting Co..

59 S. W., 1089; New Kanawha Coal Co. v. Wright, 72 N. E., 550; 1 Am. & Eng. Ency. Law (2d ed.), 1103.

The undisputed evidence showing that appellee rightfully terminated appellant's agency, if any, before a sale was consummated, appellant's cause of action for compensation, if any he had, was not upon the contract, but was upon the obligation which then arose by implication against appellee to pay the reasonable value of appellant's expenditure made by him in the premises. Hence appellant's pleading declaring upon and seeking recovery under special contract, and containing no allegations sufficient to entitle him to a recovery upon his cause of action above indicated, the court erred in charging a verdict against appellee, as it did. Braly v. Barnett, 78 S. W., 965; Gammage v. Alexander, 14 Texas, 418.

The terms of the sale, as consummated between Odell and appellee, being different from those named in appellant's contract of agency, if such contract existed, in that the former were partly cash and partly credit, while the latter was all cash, the measure of appellant's recovery, if any, is the reasonable value of his services, together with reasonable expenditure made by him in the premises. It was therefore error for the court to give to the jury the peremptory charge complained of. McDonald v. Cabiness, 100 Texas, 617; 98 S. W., 945.

Where a land owner stipulates that he is to receive a given price, net to him in cash, for his lands, and that his broker shall receive as his compensation all over the amount for which the lands are sold, and a sale is not completed because of defects in the title to the land, the broker is not entitled to recover any compensation. Such a stipulation by the owner being equivalent to making the broker's compensation depend upon the final consummation of the sale, and the receipt of the amount of the given price by the land owner. Appellant's requested instruction, therefore, authorizing as it did the jury to find for appellant the amount of $1.50 per acre on the lands rejected by Odell, because of defective title, was properly refused by the court. Ford v. Brown, 120 Cal., 551; Monroe v. Taylor (Mass.), 78 N. E., 106; Seattle Land Co. v. Day, 2 Wash., 451; Babcock v. Merritt (Col.), 27 Pac., 882; Cremer v. Miller, 56 Minn., 52.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellant against Mrs. Julia Amsler, J. C. Amsler and L. D. Amsler, to recover the sum of $5,815.50 alleged to be due appellant as commission or compensation for his services in the sale of 3,877 acres of land owned by appellees. Plaintiff alleges in substance that he contracted with appellees to procure a purchaser for said land, and did procure such purchaser in the person of one D. A. Odell, to whom defendants sold said land at the price of $4 per acre; that plaintiff was the procuring cause of such sale, and that by the terms of their contract with plaintiff the defendants agreed and promised to pay to him in consideration of his services in procuring such purchaser whatever amount they might receive for said land over and above the sum of $2.50 per acre.

The defendants answered by general demurrer and general denial, and by special pleas, in which they averred in substance:

1. That defendants withdrew, annulled and terminated plaintiff's right and authority under said contract before a contract of sale was entered into.

2. That the sale as made was made by defendant, and not according to the terms of said contract of agency.

3. That said sale was not made through the efforts of plaintiff, nor were plaintiff's efforts the procuring cause thereof.

4. That plaintiff was acting as agent of the purchaser in said sale.

5. That a part of the land so contracted for was rejected by the purchaser on account of defective title, and that plaintiff knew of said defect when he procured the purchaser.

6. That plaintiff is estopped from claiming more than fifty cents per acre, because, after the purchaser had offered $3 per acre and said offer had been rejected by defendant, and before the sale at $4 per acre had been made, plaintiff demanded of defendant fifty cents per acre as his compensation, and that defendant, when he sold said land to the purchaser at $4 per acre, did so believing that plaintiff would demand no more than fifty cents per acre as compensation.

Plaintiff directed general demurrer to defendants' answer, and special exceptions to that portion of it which seeks to set up and plead an estoppel against plaintiff's cause of action for more than fifty cents per acre commission or compensation, on the grounds that same is insufficient as a plea of estoppel, and the matters therein pleaded constituted no answer or defense to plaintiff's cause, and asked that the same be stricken from said answer.

To defendants' answer plaintiff replied (1) by general denial; (2) that defendants represented to him at the time of his employment by them that they had good title to said land and all of it, and that he relied upon said assertions and believed that they did have good title; (3) that Odell contracted to buy all of said land of defendants at $4 per acre, and that if he failed or refused to buy any portion of said land it was because the defendants did not have a good and marketable title to the land which he refused to buy; (4) plaintiff admits that he made the demand for fifty cents per acre as his compensation, but says that the same was made after the purchaser procured by him had offered defendants $3 per acre cash for all of said lands and defendants had refused to convey, and before plaintiff knew that said land had been sold to the said Odell at $4 per acre; (5) that plaintiff was the procuring cause of the sale of said land at $4 per acre.

Upon the trial in the court below the trial judge instructed the jury to return a verdict in favor of the plaintiff for the sum of $862.66, which amount was the aggregate of fifty cents per acre for all of the land sold by the defendants to Odell. Upon the return of such verdict judgment was rendered in accordance therewith.

The facts disclosed by the record are as follows: In August, 1906, appellees owned a body of land situated near Magnolia, in Montgomery County, Texas, supposed at the time to aggregate about 3,877 acres, but which in fact aggregated 3,867 acres. Said body of land consisted of the following tracts: 1,280 acres in the Jno. W. Niles survey; 441 acres in the James Pierpont survey; 580 acres in the

James M. Hamm survey; 668 acres in the Wm. Stansbury survey, and 898 acres in the R. O. Lusk survey.

Jno. C. Amsler is now, and has been ever since and prior to August, 1906, the general agent and manager for appellees, with full power and authority to contract in relation to said lands in behalf of appellees.

Appellant is, and was at the time mentioned in the evidence, a land broker, residing in Conroe, Montgomery County, Texas, and known to be such by appellee and her agent, Jno. C. Amsler, both of whom resided and still reside in Hempstead, Waller County, Texas.

On August 25, 1906, appellant wrote and mailed to John C. Amsler the following letter with reference to the above-mentioned lands:

"Conroe, Texas, 8/25/'06.
"J. C. Amsler, Esq.,
    "Hempstead, Texas.
"Dear Sir: I have a customer who I think will take your 3.877 acres north of Magnolia on condition that he be allowed to commence cutting pine-pole ties after completing purchase on that part that had been cut over. This man is a tie and timber man, and proposes to clean the land of commercial timber, and then cut it up in farms. Of course he would buy subject to Mr. Lawson's contract, and would follow Lawson's chopping, taking off the tie timber and cord-wood as fast as Lawson cut over the mill timber. Can this be arranged? Kindly answer at Magnolia, and oblige,
                              "Yours truly,
                                    "Jack Montgomery."

On August 30, 1906, John C. Amsler, in reply to the above letter, wrote and mailed to appellant the following letter:

"Hempstead, Texas, Aug. 30, 1906.
"Jack Montgomery,
    "Magnolia, Texas.
"Dear Sir: Replying to your favor of the 25th, will say, that we will sell our lands at $2.50 net to us, cash. Will write the deed to include your profit. This is in no sense an option and subject to withdrawal at any-time. Trusting that you can make a deal, we are,
                              "Yours truly,
                              "C. Amsler Estate,
                                    "Jno. C."

On September 22, 1906, appellant wrote and mailed to John C. Amsler the following letter:

"Conroe, Texas, Sept. 22, 1906.
"John C. Amsler, Esq.,
    "Hempstead, Texas.
"Dear Sir: Yours of the 30th ult. is to hand, and am working on your lands with good prospects of selling same. I am putting out one

. hundred blue prints and 500 printed folders.   Mr. F. W. Colby is working with me on the proposition.

"Yours truly,
· "Jack Montgomery."

No reply was made by Amsler to the above letter.   On February 24, 1907, appellant wrote and mailed to John C. Amsler the following letter:

"Conroe, Texas, 2/24/1907.
"John C. Amsler, Esq.,
        "Hempstead, Texas.
"Dear Sir:   Kindly advise me by return mail whether your Magnolia 3,877 acres has been sold yet.

"Yours truly, ·
"Jack Montgomery.
"P. S.:   I have a northern man I want to show it to next week— say about Saturday or Sunday.

John C. Amsler replied to the above letter by writing on the bottom thereof as follows:

."Dear Sir:   The land is still unsold, although I have been dickering with some parties there is no option.

"Yours truly,
"John C. Amsler."

On February 28, 1907, appellant wrote Jno. C. Amsler the following letter, to which Amsler made no reply:

"Conroe, Texas, 2/28/'07.
"Jno. C. Amsler,
        "Hempstead, Texas.
"Dear Sir:   I have just returned from Magnolia, where I showed your lands to two parties from Wisconsin.   They did not express themselves very favorably, but may call on you for better terms than I was authorized to grant them.   Kindly protect me in the premises, . as I priced it to them at $3.50 cash.

"Yours truly,
"Jack Montgomery."

On March 19, 1907, appellant sent from Houston, Texas, the following telegram to John C. Amsler:

"Houston, Texas, March 19, 1907.
"Jno. C. Amsler, Hempstead, Texas.
"Sold your land subject to your approval of terms.   Coming on ' morning train with buyer.                    "Jack Montgomery."

Appellant testified in substance that upon receipt of Amsler's letter of August 30, 1906, above quoted, he, appellant, began an active cam-

paign of advertisement of said lands for sale, by sending out folders and blue prints and carrying advertisements in northern and western papers, etc., and continued working on the matter, trying to effect a sale, all fall and winter; that on March 16 or 17, 1907, he showed the land to D. A. Odell of Minnesota, who agreed with appellant to buy same at $3 per acre, partly cash and partly on credit; and thereupon appellant and Odell went to Houston, Texas, and from the latter place appellant sent Amsler the telegram of March 19th, as before quoted. Odell was not the customer referred to by appellant in his letter to Amsler of date August 25th above quoted.

There is nothing in the evidence showing or tending to show that appellee or her agent, John C. Amsler, had any notice or knowledge of appellant's activities relating to procuring a purchaser for said lands, or that he was acting or purporting to act in appellee's behalf, save and except such as the correspondence above set out discloses.

On March 20, 1907, appellant and Odell went to Hempstead, where they had a conversation with J. C. Amsler, in the course of which Odell offered to buy said lands at $3 per acre, partly cash and partly on credit, which offer was refused by Amsler. Thereupon Odell offered to buy said lands at $3 per acre cash, which was likewise refused. Appellant details such conversation as follows: "John C. Amsler came to the bank in a short time, and we took the matter up with him. He made no objections to the terms of part cash and part credit. He refused to deliver at $3 per acre. I then had a consultation with Odell and at my request he offered $3 per acre all cash for the land. This offer was also refused by John C. Amsler. I spread my letters on the bank table and stated to Mr. Amsler that he knew he had authorized me to sell the land at that price. Mr. Amsler replied: 'Yes, I did, but I reserved the right to withdraw the land from your charge at any time.' I replied, 'Yes, but have you ever withdrawn it?' He replied, 'No, but I withdraw it now.'"

John C. Amsler gives the following version of said conversation: "The day Mr. Montgomery and Mr. Odell came up here I was serving on the jury. When they first came up I could not talk to them, but after awhile I got off the jury and went down town to the bank, where they were, and we talked the matter over, but as soon as they spoke of the price at $3 per acre I refused it. I never would agree to that price for the reason that lands in that vicinity had gone up in value since I wrote the letter to Mr. Montgomery of August 30th. It seems that Mr. Montgomery had represented to Mr. Odell that he, Montgomery, had an option on the land, for I remember Mr. Odell saying to Montgomery, 'Why, I thought you said you had an option on the land,' and Mr. Montgomery pulled out his letter from me of August 30, 1906, and spread it before us and said, 'Here is my option.' Mr. Odell said, 'That is no option.' I had reserved the right in my letter to Mr. Montgomery to withdraw that price at any time, and I did so that day. Mr. Odell at first wanted to pay one-third cash and the balance in one and two years, and then he offered $3 cash for the land. I priced the land to them that day at $4—or it might have been $5 per acre for some and $4 per acre for the balance. . . . When Mr. Montgomery and Mr. Odell were in the bank Mr. Odell offered

to buy the land at $3 per acre and I refused the same. Mr. Montgomery said, 'You promised to deliver it at $2.50 per acre.' I said, 'Yes, I gave you that price six or seven months ago, but lands have gone up since, and I won't sell at that price now. I expressly reserved the right to withdraw at any time.' He said, 'You have never written me that you have withdrawn it.' I said, 'Well, I withdraw it now,' and walked out. Lands of that character in that community—in the vicinity where these lands lay—had at that time risen to. $4 to $6 per acre."

After the above conversation, appellant and Odell departed from Hempstead, and afterwards, on March 23d, Odell, of his own volition, came back to Hempstead, and he and Amsler finally agreed upon and executed a contract of sale for said lands at $4 per acre, partly cash and partly on credit. Pursuant to such contract of sale, appellee conveyed by warranty deed to said Odell the 1,280 acres in the Jno. W. Niles survey and the 441 acres in the James Pierpont survey for $4 per acre, one-third cash and balance in one and two years, but the lands in the Hamm, Stanbury and Lusk surveys were rejected by Odell because of defects in appellee's title thereto.

John C. Amsler testified: "I made a trip down to Magnolia, Texas, to look after my mother's business down there. It was either July or August, 1906. I met Mr. Jack Montgomery at Magnolia, Texas, and he asked me if I had disposed of those over-cut lands. I told him no, that I had given Mr. Colby an option on that land, it was for either thirty, sixty or ninety days; that after a great deal of persuasion on Mr. Colby's part I had extended that option, and during that time I was continuously getting letters from Mr. Colby that the prospects were good; that he had taken his wife and they were spending the winter in Missouri, and in the meantime I had abstracts made and had given them to Mr. Colby.

"I remember having the conversation with Mr. Montgomery prior to August 25, 1906. I told him that the deal with Mr. Colby had failed to materialize—that it did not go through; that Mr. Colby had found some defects in the title to the land (which is the same in controversy); that Mr. Colby raised a lot of complaint about it. Mr. Montgomery told me, at the same time, that he had a great many old lands in that condition, that he had been quite successful in patching them up. I told Mr. Montgomery that we had owned the land for thirty or forty years, and for that reason I thought the title was good."

Appellant testified: "Yes, I remember having a conversation at Magnolia with John C. Amsler before I took the agency for the sale of this land. Yes, I remember that in this conversation with Mr. Amsler he stated that Mr. Colby had complained about some minor defects in Amsler's title to some of the land, but he, Amsler, in that conversation assured me that their title to it was good, stating that they had owned all of it for thirty-five or forty years. I knew absolutely nothing about their title to it, and supposed it was good. There are minor defects in nearly all titles to lands in these older surveys, but they rarely ever prove to be serious. We can usually remedy them by getting proof of heirship, etc., and have record made of same."

The first assignment of error presented in appellant's brief is as

follows: "The court erred in admitting the letter from Colby to Amsler in evidence, because it does not show or tend to show that plaintiff had either actual or constructive knowledge of defects in defendant's title that existed at the time of writing said letter by Colby."

The letter referred to in the assignment was written by Colby to Amsler on July 12, 1906, and contained this statement: "When I wrote you that your abstract showed two serious defects and asked you to explain same to relieve my mind, and you declined to do so, I of course stopped my advertising at the end of the contracts." This letter was offered and admitted for the purpose of showing that appellant had notice at the time he entered into the contract with appellees that the title to some of the land he was authorized to sell was defective. The theory upon which it was admitted was that the evidence shows that at the time it was written, and at the time appellant contracted with appellees, he and Colby were. partners, and the letter containing an admission by Colby that he had notice of the defects in appellees' title, such admission was evidence against appellant on the ground that he was charged with notice of any fact known to his partner in the undertaking.

We do not think the letter was admissible as evidence of notice on the part of appellant of defects in appellees' title. The evidence fails to show that appellant and Colby were ever partners in a legal sense so that either would be bound by the acts of the other, or that notice to one would be notice to the other. The relation between them is thus stated by appellant:

"Yes, when Mr. Colby had the agency for this land he and I were working on it together. I was to share the expenses with him of trying to sell it, and we were to divide the profits if sale was made by our efforts, and when I got this agency for it we worked the same way. Mr. Colby had a contract of agency from Amsler to sell this same land prior to the time I got this contract. He and I were partners in the matter. We shared the burdens, losses and expenses, and were to share the profits if a sale had been made, but none was made. If either of us made the sale both would have shared in the profits. This same kind of an arrangement existed between Mr. Colby and myself in relation to my contract of agency with Amsler. We are partners in this matter. We shared the burdens, losses and expenses, and also the profits, if there are any profits."

On re-direct examination the witness testified as follows: "I wish to explain my testimony of yesterday with reference to Mr. Colby and myself being partners. We were what you would probably call associate brokers. It is this way: When a land broker gets an agency for a tract of land, he sends it out to other brokers, and whichever one of them brings him a purchaser, if either of them does so, they share the profits of the sale after deducting the expenses. When Mr. Colby got this agency he sent his list to me, as well as to many other brokers, and if I had succeeded in helping him to make the sale— that is, if I had brought him a buyer or put him in correspondence with a buyer who purchased the land—I would have shared the profits of the sale after the expenses had been deducted. If no sale was

made, as was the case while Colby had the agency, then each of us bear his own expenses. That was the arrangement between Mr. Colby and myself while he had the contract. When I got the agency I sent it out to a great many other brokers, most of them in the North and West, and sent one to Colby. Colby brought Mr. Odell, and because of that fact he was entitled to share in the profits, but he looks to me and not to Amsler for his share. If any other broker had brought me the purchaser, or if I had found him myself without Colby's help, Colby would have had no share whatever in the profits."

While the original testimony of appellant might be sufficient to show that he and Colby were partners in the undertaking to sell appellee's land, in that they were to share in the profits and losses of the undertaking, his explanation on re-direct examination shows that they were not. Appellant was not a party to the contract between appellees and Colby at the time the letter was written, and Colby was not a party to the contract between appellant and appellees.

During the existence of Colby's contract he had an understanding with appellant to the effect that if appellant should send him a purchaser for the land, and a sale was made to such purchaser, he would share the profits of the sale with appellant. After Colby's contract with appellee expired and appellant entered into his contract with them he had a similar understanding with Colby. Under this agreement between them there was to be no sharing of the expenses or losses incurred by them, or of the profits, unless a sale of the property was effected by their joint efforts. An agreement by one person to give another a share in the profits of an undertaking as compensation for services to be rendered, provided such services contribute to the success of the undertaking, does not make such persons partners, and this is the relation shown to have existed between appellant and Colby.

We think, however, that the error in admitting this testimony was immaterial because other evidence before set out shows that appellant, at the time he made the contract with appellees, had notice of the defects in appellees' title or had knowledge of facts sufficient to put a prudent person on inquiry which, if followed with reasonable diligence, would have resulted in his ascertainment of knowledge of the defects in the title.

Appellee J. C. Amsler testified that when the appellant first spoke to him in regard to selling the land for him that he told appellant "that Colby had found defects in the title to the land; that Mr. Colby raised a lot of complaint about it. Mr. Montgomery told me at the same time that he had a great many old titles in that condition—that he had been quite successful in patching them up. I told Mr. Montgomery that we had owned the land for thirty or forty years, and for that reason I thought the title was good." The appellant admits that he had this conversation with Amsler, the only difference between his statement and Amsler's being that appellant states that Amsler spoke of the defects complained of by Colby as "minor defects," and that Amsler in that conversation stated that their title to it was good; that they had owned it for all of thirty-five or forty years. No other reasonable interpretation can be given this testimony as a whole than

that the assurance of Amsler that the title was good was nothing more than the expression of his opinion that, because appellees had held a title to the land for a long time, said title was good, notwithstanding the defects claimed by Colby to exist therein. The facts shown by this testimony were sufficient to put appellant upon inquiry, and that he would have learned of the defects in the title if he had used any diligence in making inquiry can not be questioned. Such being the case, he is charged with notice of the defects in the title. Having this notice at the time he undertook to sell the land for appellees, he can not hold appellees responsible for the failure of the sale of a portion of the land because of defects in the title. He undertook to sell the land with the defective title and the failure to do so was not the fault of appellees.

This disposes of all of the assignments complaining of the ruling of the court in permitting the letter above mentioned to be introduced in evidence.

The objections to the testimony of the appellee Amsler above set out, presented under appellant's tenth assignment, to the effect that the testimony was inadmissible because the statement made by Amsler as to the defects in the title was too vague and indefinite to put appellant upon notice, and because said testimony showed that Amsler told appellant that the title was good, and appellant was therefore not required to pursue the inquiry further, can not be sustained. What we have before said in regard to this testimony disposes of the objection that it was too vague and indefinite to put appellant upon inquiry.

In regard to the second objection, it is sufficient to say that the testimony objected to does not show that Amsler assured appellant that the title was good. All that he said was that appellees had owned the land for thirty or forty years, and for that reason he thought the title was good. Appellant having been informed that Colby had complained of defects in the title to the land, ordinary prudence required of him that he should not rest satisfied with the mere opinion of Amsler that the title was good because appellees had owned the land thirty or forty years.

The trial court erred in not sustaining appellant's exception to the plea of estoppel set out in appellees' answer. The facts pleaded do not constitute an estoppel. This error is immaterial, however, because appellant was not entitled under any phase of the evidence to recover more than the amount awarded him by the jury, and therefore was not injured by the error of the court in overruling the exceptions to the plea.

The only sale effected by appellant was the one to Odell for $3 per acre which appellees declined to ratify. It does not appear that appellant made any further effort to sell the land or that he could have sold to Odell for cash for any greater amount. Under his contract with appellees he was only to receive the excess over and above a cash consideration to appellees of $2.50 per acre, and the evidence shows that the cash consideration received by appellees in the sale made by them to Odell was less than that amount. This sale not having been made by appellant, and not being made in accordance with the terms

of his contract, he would not be entitled to recover the compensation therefor named in his contract.

Upon the wrongful refusal of appellees to complete the sale made by appellant to Odell in accordance with the terms of the contract, they became liable to appellant in the amount which he would have been entitled to under the contract had they ratified the sale. Appellant's rights became then fixed, and would not be changed by a subsequent sale by the appellees upon terms different from those contained in the contract with appellant. Appellant sued upon his contract, and the liability of the appellees to him is limited to the damages which he sustained by the breach of said contract, and this breach was the refusal of the appellees to ratify the sale made by him to Odell. He is not entitled to recover any part of the profits that appellees may have made by the subsequent sale of the land to Odell.

The twelfth assignment of error complains of the refusal of the trial court to give special instruction No. 1 requested by plaintiff. The special instruction mentioned in this assignment is not copied or referred to in the statement following the assignment, nor are its contents shown. The statement is clearly insufficient to entitle the assignment to consideration.

The thirteenth and fourteenth assignments complain of the refusal of the court to give certain instructions to the jury. The record does not show that plaintiff made any request that the court instruct the jury as indicated in the assignment, and for this reason the assignment should be overruled. In addition to this, as before said, appellant recovered a judgment for the full amount to which he was entitled under the undisputed evidence, and therefore any error in the submission of the case to the jury would have been harmless.

We find no reversible error in any of the assignments presented by appellant and all of them are overruled.

Under an appropriate cross-assignment the appellees urge that the judgment of the court below be reversed, because "the evidence was insufficient to establish such a contract of employment or appointment by appellees of appellant as broker to find a purchaser for appellees' land," as would entitle him to recover thereon. We think this assignment is without merit. When appellee, J. C. Amsler, in reply to appellant's letter of August 25th informing him that the writer thought he could sell the land for him under certain conditions, wrote appellant that he would sell the land for $2.50 (per acre) net cash, and that "he would write the deed to include appellant's profits," he thereby agreed and contracted that if appellant should find a purchaser for the land who would pay appellees $2.50 per acre cash therefor appellant could have as profits or compensation for his services whatever amount in excess of $2.50 per acre he might receive for the land. All of the correspondence between the parties indicates that appellant was acting under this understanding of the contract, and appellee Amsler does not deny in his testimony that such was the contract, but claims that by the terms of the contract he had the right to withdraw or rescind the agreement after appellant, without any notice of an intention to rescind on the part of appellee, had fully performed his part of the contract. No such construc-

tion should be given the contract. Appellee Amsler was informed by ·
appellant from time to time that he was continuing his efforts to pro-
cure a purchaser for the land under his contract, and appellee know-
ing this fact could not keep silent and permit appellant to continue
to spend his time and money in procuring a purchaser for the land,
and withdraw his offer after appellant had earned his compensation
by procuring a purchaser for the land under the terms of the con-
tract. The right to withdraw at any time reserved in the contract
could not be exercised by appellee after a performance by appellant of
his part of the contract.

We are of opinion that the judgment of the court below should be
affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.