## S. G. Carter & Company v. Harrell & Walker.

### Decided April 15, 1909.

**Contract—Sale—Performance—Title—Commissions.**

The owners of twenty sections of land granted to agents the exclusive right to sell same within a certain time and at a fixed price; the agents were themselves to furnish the abstracts of title, but were to have no commission unless the title was accepted by the purchaser. The latter presented objections to the title shown to two sections, which the sellers were unable to remedy within the time stipulated; thereupon the owners called the trade off and so notified the purchasers. The agents procured from the latter an agreement to take all the sections, except the two, and to give time to perfect the title to those; this the owners declined, having then sold part of the land to others. In a suit by the land agents against the owners for their commissions for having negotiated a sale, held, that there was no performance of their undertaking by plaintiffs, and a peremptory instruction in defendants' favor was proper.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*M. M. Hankins* and *Poindexter & Padelford,* for appellants.—Where the time limit for perfecting and accepting abstracts of title has been, by agreement, or acquiescence, extended, the parties at interest have a reasonable time in which to perfect and accept title. 2 Wharton on Contracts sec. 890, also sec. 887; Hanks v. Pickett, 27 Texas, 97.

The defendants could not refuse to go forward and perfect their own title, and take advantage of their own wrong, and abrogate their contract with plaintiffs, and thus deprive the plaintiffs of the legitimate fruits of their labors. 1 Wharton on Contracts, secs. 312-602-603-604; McLane v. Maurer, 6 S. W., 696; Gallagher v. Nichols, 60 N. Y., 438; Risley v. Smith, 64 N. Y., 582.

The Clarks having extended to defendants all necessary time in which to perfect their title to the twenty sections of land, this extension inured to the benefit of plaintiffs, and they were entitled to a reasonable time and fair opportunity under their contract with defendants in which to meet the objections made to defendants' title, and the defendants could not deprive them of this right, and avoid the payment of their commissions by arbitrarily declaring the trade with the Clarks at an end, and the court erred in instructing a verdict for the defendants. 2 Wharton on Contracts, secs. 887, 890; Conkling v. Krakauer, 70 Texas, 739; Berg v. San Antonio St. R. Co., 17 Texas Civ. App., 291; Sibbald v. B. Iron Co., 38 Am. R., 446; Clark & Skyles on Agency, sec. 777; Hanks v. Pickett, 27 Texas, 97; Smye v. Groesbeck, 73 S. W., 972.

*Ramsey & Odell* and *Crane, Seay & Crane,* for appellees.—The court did not err in giving the peremptory instructions for defendant. Lee v. International & G. N. Railway, 89 Texas, 588; Joske v. Irvine, 91 Texas, 582; Improvement Co. v. Munson, 14 Wall., 442.

HODGES, Associate Justice.—In 1906, the appellees, Harrell & Walker, owned twenty sections of land situated in the counties of

Roberts and Gray, which they desired to sell. On May 30, 1906, they entered into a written contract with the appellants, by the terms of which the latter were given an exclusive option on the land at an agreed price till the first day of July following. It was also provided in that contract that in the event the land was not sold by the time the option expired it was to be listed for sale with the appellants, but no exclusive option given. Among the different provisions of the contract referred to was one binding the appellants in case of sale to prepare and furnish an abstract of title to all of the land, this to be done at their own expense except as to matters outside of the counties of Roberts and Gray, where the land was situated. It appears that after the contract was executed, and probably on the same day, the parties entered into the following supplemental agreement: "Referring to a certain tract, an option this the 30th day of May, 1906, made by and between Harrell & Walker of Johnson County, Texas, and S. G. Carter & Co., of Miami, Texas, it is agreed and understood that in case Harrell & Walker can not execute a good abstract of title satisfactory to the purchaser, then the said S. G. Carter & Co. are not to claim or collect a commission unless the purchaser accept the title and abstract as presented under the sale." This was signed by all of the parties in interest. The exclusive option given to the appellants having expired, it was extended by an agreement till the 28th of August following. On that date they found purchasers in the persons of Clark & Clark, who resided at Vernon and who were willing to purchase the land upon the terms exacted by the appellees, and a written contract was on that day entered into between the appellees and the Clarks, containing the different stipulations regarding the details of the transfer, the terms of the sale and the obligations of the parties as to the abstracts of title and conveyances necessary to consummate the trade. This contract is quite lengthy, and we deem it unnecessary to quote or refer to any part of it except those portions bearing upon the questions involved in this appeal. A part of the consideration to be paid by the Clarks consisted of 194 acres of land situated in Bell County, Texas. The contract contained the following provision: "As to the title to land here conveyed by both parties of first and second part it is expressly agreed that both parties shall furnish to the attorneys of opposite parties an abstract of all land conveyed, said contracts to be furnished by October 1, 1906, then said attorney shall examine within five days and report his opinion on said title and if exceptions are found to either tract of land or tracts of land then said parties who are recited above as transferring said land shall have 30 days from the date of the lawyers' opinion to clear title as the attorney shall require, or if titles are not in shape and will not pass the opinion in due form of the attorneys of said parties of second part and said parties of first part as above set forth and within the time limit as here given then this trade shall be declared void and all forfeits shall be withdrawn." And also this further provision: "For a guarantee of good faith that both parties of the first and second parts hereto and to guarantee that they will perform as near as is possible the compliance of this contract and agreement the said Harrell & Walker and the said A. P. Clark, Sr., and A. P. Clark, Jr.,

have deposited in the First National Bank of Grandview, Texas, the sum of Twenty-Five Hundred ($2,500.00) Dollars each that should the said party of the first part be in position to close the trade as above set out and in the time above set out and should fail to do so then the said First National Bank of Grandview, Texas, shall pay to said parties of the second part the full sum of both forfeits, namely: $5,000.00, and should the said parties of the second part be in position to make deed to land and fail to do so or should said parties of second part fail to comply with this contract then the said First National Bank of Grandview, Texas, shall deliver to said parties of first part the entire forfeit pledged, namely, $5,000. However, should the said parties of first part or the said parties of second part be unable to make title to land herein set out in the time as herein given then the said First National Bank of Grandview, Texas, shall return to parties of first part their forfeit of $2,500.00 and to parties of second part their forfeit of $2,500.00 and this trade shall be declared off." It appears that no special attention was paid to the time limit within which the abstracts of title were to be presented and accepted or rejected. According to the contract this should have been done by or before November 5. A few days after this time limit had expired a conversation took place between Harrell, one of the appellees, and one of the Clarks concerning the abstracts of title which each was to furnish for their respective tracts of land. This resulted in an agreement for them to meet at Vernon and discuss the matter further. About November 13, Harrell, in response to the request of Clark, went to Vernon, and a conversation occurred between them as to the sufficiency of the abstracts which had been presented for examination. Harrell expressed a willingness to accept the title of the Clarks to the 194 acres, but Clark declined to accept that of the appellees to the twenty sections, and pointed out two objections made by his attorney to two of the sections, and at the same time delivered the abstracts to Harrell demanding that the objections be removed before he would take the land. The defects consisted of the absence of any evidence to show that one Mary Hull was a party to a former litigation involving Sec. 105, and that one Maud Sumner was the same person as Maud Horseford mentioned in the record relating to another section of the land. These were considered by Clark and his attorney as being material and important, and Harrell was given to understand that unless those objections were removed Clark would not take the land. The testimony of Clark and Harrell as to all of what actually occurred in that conversation is conflicting, but we think, when considered in its most favorable light toward the appellants, the evidence is sufficient to show that Clark delivered to Harrell the abstracts to the twenty sections and refused to complete the purchase till those objections mentioned by him were removed. He appeared willing, however, that Harrell should have further time in which to do this. It also appears that Harrell then agreed to visit Carter, upon whom he was relying to prepare the abstracts, and ascertain from him whether the objections had been met or could be, and agreed to wire Clark informing him of the result. They differ as to whether or not Harrell at that time informed Clark that he would call the trade off and that Clark assented to it,

these facts being affirmed by Harrell and denied by Clark. Clark, however, does say that he was unwilling to accept the land at that time unless the objections mentioned by him were removed, and that he so informed Harrell; but that he was anxious that the objections should be removed, and was still willing to take the land in the event this was done. Harrell accordingly visited Carter at his home at Miami, and was informed by Carter that the objections had not been met; and from a conversation which each has detailed as having occurred, it does not appear that Carter at that time had any substantial evidence upon which he could rely to expect that the objections would be met in the future, but stated what efforts he had made to furnish the proof which Clark's attorney demanded as to those particular facts and his inability so far to procure it. He asked and received permission from Harrell to wait until the next day, in order that he might communicate with Clark. He accordingly visited Clark on the following day. Harrell testifies that he did wait until the following day, and, not having received any further information regarding the removal of the objections, he telegraphed Clark that fact and declared the trade off. It appears that this telegram was received by Clark during Carter's visit. Carter returned with a written agreement on the part of Clark expressing a willingness to take all of the land at the prices agreed upon, except Sec. 105, and to permit the appellees to thereafter complete the abstracts with reference to that section, to allow them as much time as they wanted to remove the objections urged, and when this was done to take that section also. This was refused by Harrell, who stated that the land had at that time been sold. Later, and after Clark had learned that the land had been sold by Harrell, he telegraphed his willingness to accept all of the land upon the terms named and without insisting upon the removal of the objections which his attorney had made to the title. This was also refused by Harrell, for the reason that the land, or a portion of it, had already been sold. Carter, one of the appellants, testified that it was the duty of his firm under their contract with the appellees to furnish the abstracts of title to the twenty sections of land owned by appellees.

The appellants brought this suit upon their contract for commissions, alleging a sale made to the Clarks on August 28, 1906, as evidenced by the contract hereinbefore referred to. The court instructed the jury at the conclusion of the evidence to return a verdict in favor of the appellees, defendants in the court below. Hence this appeal.

There are several errors assigned, but we think the case may be properly disposed of upon that assignment which is based upon the giving of the peremptory instruction to find for the defendants.

The real question here involved it, did the appellees have the right under their contract with the Clarks to withdraw their offer to sell the land at the time they did? It seems that the contract with the Clarks had been so worded as to permit either party to withdraw their offer if they were unable to furnish a satisfactory title. Appellees did not exercise that right till after the expiration of the time within which they were to do this and after the Clarks had refused to approve the

abstract furnished and accept the title tendered, or to take the land unless the objections pointed out by their attorney were removed. The undisputed evidence shows that Harrell consulted Carter as to whether or not the latter had the data with which to meet the objections urged by Clark, and was informed by Carter that he had not, and from what Carter himself says it was exceedingly uncertain as to whether these could be obtained even by waiting. The appellants by their contract with appellees undertook to get up the abstracts, and further, were bound to do it within the time stipulated in the contract between appellees and the Clarks—that is, within thirty-five days after October 1. In this they failed. The fact that the parties had tacitly consented not to invoke the time limit after its expiration, does not help the cause of the appellants. The right of either party to withdraw his offer when this time had expired did not depend upon the consent of the other, but was governed by the terms of the contract which they had made. If the appellees made a bona fide effort to furnish a title satisfactory to the Clarks within the time specified, and failed, the refusal of Clark to accept the title which they offered would release appellees from any further obligation to continue to hold their offer open, and they had the right to declare the negotiations ended. Appellants can not claim that Harrell & Walker, the appellees, did not make a bona fide effort to furnish the title, because appellants undertook to do for them this particular work and the failure was theirs. Appellants insist that the Clarks being willing to extend the time for appellees to perfect title and remove the objections made to the abstracts, the latter had no option but to take the time. We think the position utterly untenable, and that it is opposed to the very terms of the contract. If the Clarks wanted the land they had but to waive their objections to the title and take it before the offer was withdrawn. If they were unwilling to accept the title tendered they had no right to thus tie up this land indefinitely and prevent sales to other parties who might be willing to accept the title which the appellees offered. The extension of the time limit beyond that stipulated in the contract was as much a matter of agreement between the parties as was the making of the original contract in the first instance. The question of forfeiture as urged by appellants is not involved. If after the stipulated time expired within which the parties were required to furnish their abstracts of title the bona fide offers of title had not been accepted, either party had a right to withdraw their offers and nothing was forfeited. Appellants by their own contract with appellees made their commissions to depend upon the acceptance of appellees' title by the purchaser. It was expressly stipulated that unless this was accepted they should receive no commissions. In this case the purchaser refused to accept the title offered till after he knew the land, or a portion of it, had been sold to another. Clark's offer to take part of the land and wait on the appellees to perfect title to the remainder was not in accord with the terms of the contract; that instrument provided for the sale of all of the land in a lump.

We think, under the undisputed evidence in this case considered in its most favorable aspect toward the appellants, the court properly

instructed a verdict in favor of defendants in the court below. The judgment is accordingly affirmed.

*Affirmed.*

Writ of error refused.