WILLIAMS v. DOAN et ux.　(No. 7440.)

(Court of Civil Appeals of Texas.　Galveston.
Jan. 17, 1918.　On Motion for Re-
hearing, Feb. 13, 1919.)

HUSBAND AND WIFE ⬅152—SEPARATE ES-
TATE OF WIFE—RIGHT TO CONTRACT.

Under Rev. St. 1911, arts. 4621, 4622, 4624,
as amended by Acts 33d Leg. c. 32 (Vernon's
Sayles' Ann. Civ. St. 1914, arts. 4621, 4622,
4624), relating to married women and their sep-
arate estates, *held* that where a married woman
agreed to pay a real estate broker a commission
for effecting a sale of her separate estate, and
the land was sold to a purchaser secured by the
broker, the husband joining in the conveyance,
the broker might recover, though the husband
did not authorize his wife to enter into the
contract originally.

Appeal from Harris County Court; W. E.
Monteith, Judge.

Action by W. B. Williams against A. D.
Doan and Mrs. Delia Doan, his wife.　From
a judgment for defendants, plaintiff appeals.
Reversed and rendered.

Guynes & Colgin, of Houston, for appellant.
Atkinson, Graham & Atkinson, of Houston,
for appellees.

LANE, J.　This suit was instituted by ap-
pellant, W. B. Williams, a real estate broker,
against Mrs. Delia Doan, wife of A. D. Doan,
for the sum of $215, agreed commission for
consummating a sale of certain land, the
separate property of Mrs. Doan, to A. R. Jay
and wife, A. D. Doan being joined pro forma
with his wife as defendant for the purpose of
suit, as required by law.

Plaintiff alleged a contract between him-
self and Mrs. Delia Doan by the terms of
which he was to receive a commission of $215
for making a sale of certain land belonging
to Mrs. Doan; that he sold said land to Jay
and wife at a price beneficial to the property
of Mrs. Doan, and that thereafter Mrs. Doan,
joined by her husband, conveyed said land to
the purchaser procured by plaintiff upon the
terms agreed upon by all parties.　He prayed
for judgment against Mr. and Mrs. Doan
jointly and severally for the sum of $215 upon
an express contract, and in the alternative
for said sum as the reasonable value of his
services.

Defendants answered by general denial and
by special plea that at the time of the alleged
contract and at the time of the alleged sale of
said land Mrs. Delia Doan was the wife of A.
D. Doan, with whom she was living at the
time of said transaction; that at no time did
A. D. Doan consent to, or acquiesce in, the
employment of plaintiff by Delia Doan or
any one else, nor had he by word or deed au-
thorized such employment, or ratified same.

Plaintiff by supplemental petition, among
other things, alleged:

"Further answering said answer of said de-
fendants, this plaintiff says that the defendant
A. D. Doan well knew that his wife was selling
said property, and well knew that she had made
arrangements with W. B. Williams as a real es-
tate agent for the sale thereof, and well knew
that she individually and through her authorized
agent, F. W. Jackson, had agreed to pay him 5
per cent. on an amount represented by $4,300 of
notes; that thereafter said A. D. Doan joined
his wife in a deed to the purchaser found by
said Williams, and thereby approved and ratified
her sale for said land and her agreement for
commission, and said defendants accepted the
benefits of said trade and said sale brought
about by the efforts of said W. B. Williams, and
they are each now estopped to deny that said
Williams had no authority from them, or either
of them, and they are each of them estopped to
deny that plaintiff is entitled to said commis-
sions on the ground of nonjoinder.

"Plaintiff further says that defendants, and
each of them, are estopped to deny plaintiff's
authority because each of them were definitely
informed before they closed said sale to the pur-
chaser found by plaintiff, and each of them well
knew that said Williams had found such pur-
chaser and had been promised said commission
by F. W. Jackson, and that plaintiff was ex-
pecting payment thereof when said sale would
be consummated, and, acting upon such knowl-
edge, they accepted said purchaser found by
plaintiff, and made the sale of their property to
said purchaser and in every way ratified the
agreement of plaintiff and said Jackson, and are
now consequently estopped to deny same."

The evidence was substantially as follows:

W. B. Williams testified, substantially,
that he was a real estate agent, and that Mrs.
Doan, 10 or 12 months prior to the sale, had
asked him to sell her property for $6,500
cash, and that, if he found any one who want-
ed her place, to take it up with her son, F.
W. Jackson, and whatever he did was all
right. About one year thereafter he found the
Jays, and took the matter up with Jack-
son, having been referred to him as above
stated.　He explained that the Jays wished
to put in some Houston property as a cash
equivalent of $2,200, for first payment, and
to pay the balance by giving ten vendor's
lien notes of $430 each.　Jackson said it was
perfectly all right with his mother, as she
had placed the matter in his hands; that he
(Williams) was the sole procuring cause;
that the title to Jays' property was found
good, but Mr. Mobley discovered a lien of
$750 against the Doan property.　Deeds were
executed by each of the contracting parties;
Doan and his wife making a deed to the Jays
and the Jays making a deed to the Doans.
Ten notes of $430, secured by vendor's lien
against the property conveyed to the Jays,
were executed by the latter, and by agree-
ment the last two of said notes were placed
in escrow until judgment was obtained, or

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

would be obtained, removing the cloud cast by said lien of $750 on the Doan property. This was done to the satisfaction of Mr. Mobley. He considered the sale closed, and demanded payment of his commission as soon as deeds were made, and the notes executed, but Jackson stated that appellant should wait until the title was cleared by Mr. Mobley. Both parties went into possession of the respective property sold and bought by them. Mrs. Doan has since sold the property received by her from the Jays. Jackson said he was agent for his mother. The telegram Mr. Jackson gave to Mr. Mobley, signed by Mrs. Doan, showed he had full authority to act in the premises. Before the sale was made Jackson wrote his mother that the sale was being made through appellant, instead of Mr. Mills, and that appellant was to get 5 per cent. commissions on $4,300 and fully explained the whole situation. This letter was duly mailed, and Mrs. Doan never counteracted the listing of said property with appellant, nor did he hear from said letter written by Jackson. When he demanded payment of his commissions, Jackson said that same would be paid, but there was a difference between him and the Jays, and the refusal was made on that ground. That he was the one who found the Jays and spent both time and money in trying to close the matter; no one ever disputed his right to commissions, but Jackson, as agent, refused to pay the same until the matter with Jay was definitely settled. That the sale of the Pasadena property was beneficial to the separate estate of Mrs. Doan. That the amount she received was not more than the place was worth.

A. R. Jay testified substantially:

"W. B. Williams is responsible for my having bought the Doan property. Jackson said he had full authority from his mother to handle the matter, and whatever he did would be satisfactory to her. A telegram from his mother was sent him at the request of Mr. Mobley, giving him full power to act in the premises. I have a suit against the Doans for misrepresentations made by Jackson concerning the crops, and the two last notes are tied up by this suit. I consider Mr. Williams is responsible for my having bought the Doan property. I am now in possession of the Pasadena property, and am not trying to rescind the sale. The two last notes were placed in escrow to protect against the lien of $750 on the Pasadena property. Mr. Mobley cleared the title, and I considered the trade closed. I have paid all but the last two notes."

A. D. Doan testified that he had never given authority to Jackson, and that at the time of said sale he was living at Port Huron, Mich., where they have a home. Mrs. Doan also testified that they have been living at Port Huron, Mich., since they left Pasadena.

Mr. Mobley testified: That Jackson stated to him that his mother had placed the matter in his hands to handle, and he had authority; but he required Jackson, as a condition precedent, to get a power of attorney from his mother. A telegram was sent by her confirming this power. It gave full power to him to represent her, and close the trade and do whatever was necessary in the premises. That he examined the title to both properties, and found a lien of $750 against the Pasadena property. Jay and wife made a deed to Mrs. Doan of their Houston property, as the first payment of an equivalent value of $2,200 cash, and Doan and wife joined in a deed to the Jays conveying the Pasadena property, and reserved a lien for $4,300, for which sum the Jays executed ten notes of $430 each, and the last two thereof were placed in escrow until the title was cleared. The trade was closed; the defect was removed by suit. "The contract which you hand me is the contract which Jackson executed in behalf of his mother."

W. B. Williams also testified, his being the only testimony on the point, that Mrs. Doan's property was worth at the time of the sale in the neighborhood of $6,500, the amount for which it was sold, and that that was a fair valuation therefor.

A jury was selected and sworn to try the cause, but after the evidence was all in the court instructed the jury as follows:

"You are hereby charged that the undisputed evidence shows that defendant Mrs. Delia Doan was a married woman at the time of making the alleged contract for the sale of her separate property and for the payment of commission, and accordingly, plaintiff having failed to make his case, you will return your verdict for the defendant."

Verdict was accordingly returned, and judgment rendered for appellees.

Appellant assigns the charge of the court as error, and insists that the judgment rendered should be reversed, and that judgment should be here rendered for appellant. We feel constrained to agree with the contention of appellant. The evidence shows the contract and sale of the land thereunder substantially as alleged by appellant. It also shows that the sale was consummated by a conveyance thereafter executed by Mrs. Delia Doan and her husband, A. D. Doan. A contract of the wife for the services of a broker to find a purchaser for her separate property is enforceable since the passage of the act of the Thirty-Third Legislature of 1913. The caption of that act (Acts 33d Leg. p. 61 [Vernon's Ann. Civ. St. 1914, arts. 4621, 4622, 4624]) is as follows:

"An act to amend articles 4621, 4622, and 4624, title 68, chapter 3, of the Revised Statutes of Texas, 1911, concerning marital rights of parties, * * * conferring upon the wife, the power to make contracts, authorizing suits on such contracts, giving the wife control over her separate property," etc.

Article 4621, as amended, provided that:

"All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired shall be the separate property of the wife. During marriage the husband shall have the sole management, control and disposition of his separate property, both real and personal, and the wife shall have the sole management, control and disposition of her separate property, both real and personal; provided, however, the joinder of the husband in the manner now provided by law for conveyance of the separate real estate of the wife shall be necessary to an incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this act; provided, also, that if the husband shall refuse to join in such incumbrance, or conveyance, or transfer of such property the wife may apply to the district court of the county of her residence, and it shall be the duty of the court, in term time or vacation, upon satisfactory proof that such incumbrance, conveyance or transfer would be advantageous to the interest of the wife, to make an order granting her permission to make such incumbrance, conveyance or transfer without the joinder of her husband, in which event she may incumber, convey or transfer said property without such joinder. Neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings shall be subject to the payment of debts contracted by the husband."

By article 4622 it is provided that the personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her, and dividends on stocks owned by her shall be under the control, management, and disposition of the wife alone.

Article 4624 provides that neither the separate property of the husband, nor the community property, other than the personal earnings of the wife, and the income, rents, and revenues from her separate property, shall be subject to the payment of debts contracted by the wife, except those contracted for necessaries furnished her or her children; provided, the wife shall never be the joint maker of a note or a security on any bond or obligation of another without the joinder of her husband with her in making such contract.

The emergency clause of this act is as follows:

"The fact that the present law denies to married women the right to manage their separate property, and to make contracts is unjust to a large number of citizens of this state creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and it is hereby suspended."

It is manifest that since the passage of the above-mentioned act the wife has sole management, control, and disposition of her separate property, both real and personal, including her personal earnings, the rents from her real estate, interest on bonds and notes belonging to her, and dividends on stocks belonging to her, with the exception only that she shall not incumber her separate real estate, or convey the same, or transfer stocks and bonds belonging to her, unless she be joined in such conveyance or transfer by her husband in the manner provided by law for the conveyance of her lands. We also think it manifest that the powers thus conferred upon the wife, that is, "the sole management, control and disposition of her separate property," necessarily implies that she shall be permitted to contract with relation thereto as she pleases, limited only as above stated. We think it clear from the caption and emergency clause of the act referred to that the Legislature intended to empower the wife to make some contracts with relation to her separate property which she had no authority or power to make before the passage of said act; for it is recited in said emergency clause that the fact that the law then in force denies to married women the right to manage their separate property, and make contracts, is unjust, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended and the bill be put in force from the passage thereof.

To give an abstract right of disposition, without its incidental means, is to deny the wife the very power whch the lawmakers contemplated. Nowhere does the statute say or intimate that it is necessary to the enforcement of her contracts that the husband should join therein; but the control and disposition is left to the wife solely, and, this being true, it must, by the very nature of things, carry with it the inherent right to contract in reference to the disposition of her property.

Mr. Justice Speer, in his very valuable work on Married Women, makes use of the following language:

"The right to recover by suit is a necessary incident to the right to manage and dispose, and inheres in the owner, unless otherwise provided by statute."

Proceeding from the correctness of that view, it is only the application of elementary principles of law that the right of sale carries with it the inherent and incidental rights of contract with reference to the consummation of the sale. Deny the wife this right, and at one fell blow every power and every right which the statute sought to confer in this amended article is ruthlessly and unjustly swept away.

It must be conceded that if the amendment does not enlarge her rights and her powers in the respects claimed, then the added change is mere surplusage, and a body of lawmakers were making play with idle words. The very fact that an amendment was made confronts us with the questions: Why was it made? What was its purpose? What its effect?

The conclusion seems inevitable to us that the Legislature knew the existing law upon the subject concerning which it was legislating, and that it was its intent and purpose to make a change in the law. The emergency clause of the amendment gives recognition to the injustice which the old law imposed upon married women, and in substance recites that it is unjust to deny her the right to contract with relation to her separate property.

Quoting further from Mr. Speer's work:

"When it is considered that the old law, with its well-recognized limitations upon the right of a wife to contract, is for that reason considered by the lawmakers to be unjust, and the declared object, as expressed in the caption of the bill, is to confer upon the wife the power to make contracts, the purpose of remove the unjust restrictions, and to enlarge the contract capacity of married women, is apparent, and the act, in pursuance of such purpose, should be liberally construed, with a view of accomplishing the end desired. Generally speaking, under the old law a wife could not contract. This was considered to be, as it was, unjust. It is just that wives should be allowed to contract, and the whole purpose of the act, upon this point, is to empower them to do so, except as they are forbidden in the act itself."

We could not better present our views of the law under discussion than has been done by counsel for appellant in a very able argument filed in this court in this case, which we here adopt as our own as follows:

Article 4624 is as follows:

"Neither the separate property of the husband nor the community property other than the personal earnings of a wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children; provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

This article is too obvious in its meaning and effect for controversy: (1) It declares the husband's separate property and the community property as being liable for the wife's debt, where contracted by her for necessaries furnished herself or children; (2) it declares the wife's personal earnings, as well as the income, rents, and revenues from her separate property, as being liable, unconditionally, for the payment of her debts; (3) it declares, in accordance with a well-known rule of exclusion, that her separate property shall be liable for the payment of her debts. This is necessarily so, since the words, "other than the personal earnings of the wife, and the income, rents and revenues of her separate property grammatically and legally construed, qualify and refer to only the community property. The act plainly recites that the separate property of the husband shall not be liable, and that the community property shall not be liable, except as to the earnings, income, rents, and revenues of her separate property. Hence it is apparent that by saying that neither the separate property of the husband, nor the community estate of the marital union shall be liable for the payment of the wife's debts, it clearly implies that her own separate property shall be subject to pay such debts as are by her justly contracted.

For what debts, then, is her separate property and the designated portions of the community estate liable? The wife's debts. What debts of the wife? All kinds and character of debts, save and except such obligations which cannot be by her contracted, viz.: Being joint maker or surety on any bond, or obligation of another, without the joinder of her husband.

Thus it will be seen that the amended statute recognizes to the fullest extent that the wife has the power and capacity to contract debts, and that the only debts which she cannot incur under law are those which are specifically excepted in the act itself. Quoting Mr. Speer again:

"It is to be observed the language of the amending article is radically different from that of the amended. The old article specially authorized the wife to contract certain liabilities, which by a well-known rule of construction forbade any other. The new article forbids her making any contract of joint liability on a note, or of suretyship on any bond or obligation of another, without the joinder of her husband with her in making such contracts, and by the same well-known rule of construction necessarily authorizes her to make any other contract. In other words, the change wrought is that, where the power to contract was originally denied generally, but authorized specially, it is now denied specially, and authorized generally. Under the terms of the present law a married woman can make any contract an unmarried woman can make, with the sole exception named in the statute. This view is supported and rendered well-nigh conclusive by the painstaking reservation in the amended article that 'neither the separate property of the husband, nor the community, other than,' etc. [Here quoting article 4624. * * *] From the history of the legislation, the consideration of the well known and expressed evil intended to be remedied, and the general language of the bill, with its limitations specially expressed, there can be no other conclusion than that the Legislature intended to confer upon married women the power generally to contract, subject only to some minor limitations. Much that has been decided heretofore has therefore lost its importance." Speer's Married Women, p. 198.

Again speaking of amending article 4261, the same author says:

"Thus it will be seen that the statutory rule existing in the state since the early days of the republic, by which the husband was given exclusive right to the possession, control, and management of the wife's separate property, has been swept entirely away, and the power has been given to her, with slight limitations, to contract and dispose of her separate property at will."

Articles 4621 plainly indicates that the joinder of the husband shall be necessary to an incumbrance or conveyance of the wife's separate property; but it also clearly implies, as well as expresses, her exclusive right to control, manage, and dispose of her property, and of her contractual capacity in relation thereto. If the law had inhibited all contracts by her with reference to her separate property, it would in consequence have rendered void all conveyances by her made without the joinder of her husband. But in qualifiedly denying her the right to convey her separate property, the greater in this instance does not necessarily include the lesser, because the principle is negatively applied in lieu of being affirmatively applied; but rather to prohibit the doing of the greater without prohibiting the doing of the lesser act would necessarily imply permission to do the lesser. This reasoning follows, as the night the day, especially in view of her general authority to dispose, hindered only by the manner in which this must be done, viz. by joinder of the husband or under order of the district court.

The lawmakers contemplated that, as the wife had the power of management, control, and disposition of her own property, she would enter unto contracts expressing the exercise of that right. In order, accordingly, to safeguard, perhaps, a newly emancipated individual, it placed restriction in the manner of the disposition, while at the same time recognizing the right to contract in reference to that very disposition. In giving her this newly created contractual right it also, in effect, placed in the husband's hands a veto power to the carrying out of the contract, but this veto power they foresaw would in many cases be unjustly and unwisely exercised, and, in order to safeguard against the husband's unwise or unjust interference of the wife's contractual rights, they gave her an appeal to the district court. Thus it will be seen that the Legislature contemplated that the husband would refuse to join in conveyances for which the wife had contracted, and that it effectually provided against this contingency. These very provisions and restrictions on the power of husband and wife, in the nature of checks and balances against the unwisdom, injustice, of one or the other, recognizes the wife's power of contract as though the very words themselves had plain-

ly been written in the statute itself, giving the wife the power to enter into a contract for the sale of her separate property without her husband's joinder; and no citation of authorities is requisite to uphold the statutory construction that whatever is implied in the law is just as much law as though it were clearly expressed in the law.

A cursory analysis of the act in question shows that the husband's power of refusal is of qualified character. The wife's rights do not stop there, and are not rendered nugatory by such refusal. In the latter instance, of refusal on the part of the husband, final authority is lodged with the district court, and this authority is not an arbitrary one, but hinges on whether or not the conveyance in question will be beneficial to the wife's interests. This question can never reach the district court until the husband has declined to join in the conveyance, and the husband cannot in fact decline to join before a deed of conveyance is presented for his execution, and as a general rule a deed of conveyance will never be presented for his joinder and execution until the wife, in the natural course of the exercise of her rights to manage, control, and dispose of her property, has contracted for its disposition.

It may be pertinent to inquire, then, as to how the wife is ever, in the ordinary course of things, to present her right of beneficial conveyance to the determination of the district court, in relation to the sale of her property, if she is not given sufficient power under the statute authorizing her to manage, control, and dispose thereof, to enter into and make contracts with brokers and agents to find purchasers for her property. How will she find a purchaser for her lands if the husband at the very threshold of the transaction refuses to agree that she may offer the same for sale?

This right to manage, control, and dispose of her separate property, and the great care which the lawmakers manifested in the wife's welfare in requiring the sale to be beneficial to her interests, when the husband refuses to join, evidence most lucidly that they were not dealing in mere words, but in rights which would be beneficial to the wife. The lawmakers are considering the past injustice, which has long been endured by every wife in this commonwealth, and they are righting this long-endured wrong, and the main things standing out in bold relief in the act are the rights of the wife, her emancipation from contractual slavery, that she may, more freely and more beneficially to herself, deal with her own separate property.

One of the most advantageous rights in the control, management, and disposition of her separate property is the right to list the same with brokers and agents. Our modern complexity of commercial transactions renders it almost necessary to a certain degree

that we shall from time to time apply to those who make specialties along certain lines. Real estate agents and brokers, with their long and varied experience, and their opportunities for reaching purchasers that are not usually open to the proposed vendors, make it especially advantageous at times to seek their assistance, and more beneficial results are obtained through the medium of their efforts than could be enjoyed by one inexperienced in the selling of property.

It inevitably follows that if the wife has not the contractual capacity with reference to her separate property, and cannot enter into a binding agreement to pay commissions for finding purchasers for her property, then indeed is the law under consideration a meaningless jargon of mere words, without results, without justice, without change, and lacking in the progressive equity of an advanced civilization. If she may not contract at the very outset without the sanction of her husband, clearly she will be deprived of that most valuable right of seeking purchasers through recognized channels of business intercourse, and will by reason of this fact lose those sales which would prove most beneficial to her estate, if indeed she could ever find a purchaser who would agree to buy her lands. In rare instances would she enjoy the right of appeal to the district court for lack of purchasers for her property.

Verily, an adverse construction and less liberal interpretation of the statute would leave the wife powerless and at the mercy of her husband, without a proposed sale to be submitted for the district court's approval or confirmation; for it will readily be observed that the act does not, in hæc verba, or otherwise, confer upon her the right to appeal to the district court until she has first found a purchaser who is ready and willing to pay a specified consideration not agreeable to the husband, in which event the court is to determine the benefit vel non of the conveyance to the wife's estate.

Having reached the conclusion that the uncontradicted evidence shows that appellant was engaged by Jackson by authority of Mrs. Doan to procure a purchaser for her land, and that appellant did procure such purchaser to whom Mrs. Doan and her husband, A. D. Doan, conveyed her said land for the consideration and upon the terms given to appellant, and having further reached the conclusion that the contract of employment of appellant was a contract looking to the disposition of the separate property of Mrs. Doan, and one which she was authorized under the law to make, we here reverse the judgment of the trial court, and render judgment for appellant, W. B. Williams, for the sum of $215, as against Mrs. Delia Doan.

Reversed and rendered.

On Motion for Rehearing.

Appellees, Mr. and Mrs. A. D. Doan, have filed their motion for a rehearing in this cause, and have therein directed our attention to the decision of the Supreme Court in the case of Red River National Bank v. J. E. Ferguson et al., 206 S. W. 923, wherein that court announced a contrary holding to so much of the original opinion in this case as holds that the amended statute (Acts 33d Leg. 1913, p. 61) recognized to the fullest extent that the wife has the power and capacity to contract debts, except such as she is specifically forbidden to contract under the express terms of said statute.

In deference to such holding of the Supreme Court we withdraw that part of the original opinion above mentioned as being in conflict with the holding of the Supreme Court; but, believing that the original opinion otherwise properly disposes of the appeal, we overrule the motion for rehearing.

Overruled.