## CAGE et al. v. F. P. EASTBURN & CO.
### (No. 9304.)

Court of Civil Appeals of Texas. Galveston. Nov. 21, 1929.

Rehearing Denied Appellees, and Granted Appellants, Dec. 19, 1929.

Walter F. Brown, of Houston, for appellants.

King, Wood & Morrow, of Houston, for appellee.

PLEASANTS, C. J. This is a suit by appellee against appellant to recover commissions of 5 per cent. on the purchase price of land that appellants had, on October 1, 1925, listed with appellee, a firm of land agents, for sale.

The petition alleges, in substance:

That the land for the sale of which appellants agreed and promised to pay appellee a commission of 5 per cent. was owned by appellants, Elliott Cage and his wife, Roene Cage, the interest of Mrs. Cage in the property being her separate property, and that "being desirous of selling said land, defendants on the day and year aforesaid, placed and listed the same with plaintiff for sale, and employed plaintiff to procure a purchaser for said land at the price and upon the following terms and conditions, to-wit:

"The sum of fifteen hundred dollars ($1,-500.00) per acre, or the aggregate sum of sixty-six thousand dollars ($66,000.00) to be paid in cash and by notes, and the assumption of outstanding purchase money notes executed by the defendants when they purchased said land, and upon such terms as were satisfactory to defendants.

"That at the time of so employing plaintiff, and placing and listing said lands with the plaintiff for sale as aforesaid, it was agreed and understood by and between plaintiff and defendants, that plaintiff should undertake to obtain a purchaser for the defendants, and bring about and cause a sale for defendants of said above described land and premises for said sum, payable upon such terms as defendants would accept in consideration of the sum of five per cent. (5%) commission to the plaintiffs on the full amount of the sale price of said land and premises, to be paid over to plaintiffs by the defendants at the time of making said sale, which the defendants agreed, promised and obligated themselves to pay to plaintiff for such services, and which said commission so agreed upon was the usual and customary commission prevailing in the City of Houston at the time, for like services."

It is further alleged that if plaintiff is mistaken in the allegations that both defendants listed the land with plaintiff and entered into the agreement for the payment of the 5 per cent. commission, such listing and contract was made by defendant Elliott Cage for himself and as agent of his wife, with full authority to represent her, and that subsequent to the making of the contract it was ratified and agreed to by Mrs. Cage, and that thereby she and her separate estate became bound for the payment of plaintiff's commission.

It is then alleged:

That in pursuance of this contract, appellee firm, after having advertised the land for sale and shown it to various prospective purchasers, on or about December 18, 1925, procured a purchaser for the land in the person of. Mrs. Hattie O. Baldwin of Houston, Tex., at the price of $1,500 per acre, or the aggregate sum of $66,000, of which $11,000 was to be paid in cash and the remainder by assumption of vendor's lien notes on the land, and execution by the purchaser of three notes for the aggregate amount of $22,000 secured by a vendor's lien on the land, the contract of sale further providing that the land was to be surveyed by the seller and the aggregate price to be paid therefor should be determined by the amount obtained by multiplying the number of acres shown by the survey by the agreed price of $1,500 per acre.

"That said terms of sale were satisfactory to the defendants and said purchaser, and the defendants did approve and accept the said terms and conditions of said sale as aforesaid, and did on the 18th day of December, 1925, enter into a written contract with said purchaser, by the terms of which they bound and obligated themselves to accept said terms of sale and to convey said lands to the

purchaser upon said terms; that said purchaser was ready and willing and able to comply with said purchase and the terms thereof as aforesaid, and agreed to purchase the same upon said terms, conditioned only upon the approval of title to said lands, an abstract to which, showing a good record title in defendants, was to be by said defendants furnished to the purchaser for examination.

"That while defendants represented that they were the owners in fee simple of said land, that, in fact, the defendant Roene Cage owned the fee simple title to said lands, or the greater portion thereof, in her own right, and as a part of her separate estate, and that the listing and contract with the plaintiff to procure a purchaser for said land upon the terms and conditions as hereinabove alleged, was in relation to and for the benefit of the separate estate of the defendant Roene Cage, and had said sale been consummated by the defendants to purchaser, as aforesaid, same would have benefitted and enhanced the value of the separate estate of the defendant Roene Cage in a sum equal to the difference in the selling price so agreed upon, as aforesaid, and the purchase price paid by said defendants for said land, aggregating the sum approximately of twenty-two thousand dollars ($22,-000.00)."

It is also alleged in the petition:

That by the terms of the contract of sale the purchaser was to be allowed 30 days after the delivery of the abstract of title to examine the abstract, or have same examined, and to consummate the purchase, or if any valid objections to the title were found, to notify the sellers of such objections, and the sellers were then to have 30 days after delivery of written notice of the objections to cure or remove same. That the abstract was furnished and was examined by the purchaser and valid objections found to the title of which the defendants were duly notified.

"That while the written contract of sale so executed by defendants and the purchaser allowed defendants thirty days from the date said objections were pointed out and furnished to them, within which to cure the same, it became and was inconvenient and impracticable for defendants to correct said title by removing said objections within the time allowed by the terms of said contract, but defendants promised and agreed to cure said objections, and continued thereafter for a period of some six months after the expiration of the time allowed by the contract, which defendants should have to correct the objections made to the title, to deal and negotiate with the purchaser, her attorney, and the plaintiff, looking and undertaking, and promising to clear and remove said objections, and because of which promises, dealings and negotiations during said period of time, the defendant abrogated and waived the provision of said contract, allowing them only thirty days after receiving said written objections within which to cure the same and pass the title, and thereby promised, bound and obligated themselves during said period of six months to correct and cure said objections. * * *

"Plaintiff further alleges that said objections to the title so pointed out were such that defendants could have easily removed and cured and corrected said objections during the period of time they were dealing with and promising said purchaser so to do, in one of the ways suggested by the purchaser, or in some other way satisfactory to said purchaser, but plaintiff alleges that said defendants failed and refused to cure said title or to correct said objections, and refused to exercise any diligence so to do which, if they had done, said objections could have been cured, and the title accepted within the time said negotiations continued, but defendants desired, because of the advanced and enhanced value of said land, to refuse to make said sale, and arbitrarily declined to make said corrections, which they could have done, and consummated said sale.

"Whereby the defendants then and there became liable and promised to pay the plaintiff the sum of 5% commission at Fifteen Hundred Dollars ($1,500.00) per acre for the actual number of acres contained in said premises as would have been revealed by said survey, which defendants likewise failed to have made, but which plaintiff alleges to be 43.53 acres, aggregating the total sum of Thirty-Three Hundred Dollars ($3,300.00), which said sum was equivalent to 5% of the total sale price, and was a reasonable charge for such services, same being the usual, and customary charge for like services, prevailing in the City of Houston."

The defendant Elliott Cage answered by general demurrer and general denial, and specially denied that he made any contract for his codefendant, or that he had any authority from her to make the contract declared upon by plaintiff. He further specially pleaded:

"That plaintiff was informed and knew at all times prior to the date of the contract set out in said petition, that this defendant had no interest in the land described. That he informed plaintiff at the time of listing said property with him and again before agreeing upon and signing the contract, that no commission would be paid him unless an actual sale of the property was made in which the owners received the cash consideration and notes were executed and delivered. And that if for any reason the purchaser did not accept the property, no commission would be paid. That except for this understanding with plaintiff, neither this defendant nor defendant Roene Cage would have signed said contract.

"That before entering into said contract this plaintiff was informed as to the ownership of said property and knew of the interest of his children in said property.

"That prior to October 1, 1925, plaintiff knew that this defendant had been adjudged a bankrupt and that any interest owned by him in any property prior to that time was held by the trustee in bankruptcy."

Mrs. Cage answered by general demurrer, and special exceptions on the ground that the petition shows on its face that she was a married woman at the time the alleged contract was made, and that such contract was not for the benefit of her separate property, and therefore not a contract she was authorized to make. She also denied generally all of the material allegations of the petition, and specially pleaded "that at all times material thereto, plaintiffs knew all the facts as to the title to said property, and were especially advised of and familiar with the facts on which the alleged objections to said title were based."

The trial in the court below resulted in a verdict and judgment in favor of plaintiffs, composing the appellee firm, against the defendant Mrs. Roene Cage for the amount claimed in their petition, and in favor of the defendant Elliott Cage, "that plaintiff take nothing against him."

This appeal is prosecuted by Mrs. Cage, joined pro forma by her husband.

We feel constrained at the outset of this opinion to protest against the unreasonable number of assignments and propositions presented in appellants' brief. The nature of the case, as disclosed by the pleadings, indicates that only a few controlling questions could arise upon the trial, and the record discloses that all of the material errors complained of could have been presented in probably one-tenth of the 77 propositions in the brief. The larger portion of these propositions present the same point in a somewhat variegated form, which adds nothing to the force of the brief, but lays an unnecessary burden upon the court in reading and digesting the entire brief, and tends to complicate and confuse rather than to clarify the material issues. We earnestly appeal to the profession not to follow in their briefs the practice of incumbering the record by useless repetitions and immaterial matter which our stenographer's law has injected into the preparation of statement of facts.

The cause was submitted to a jury upon special issues, and in response to questions presented by the charge the jury found: "That on or about October 1, 1925, Elliott Cage agreed to pay plaintiff Eastburn a commission of 5% on the price of the property involved in event plaintiff found a purchaser for the property upon terms acceptable to the sellers. That Elliott Cage was authorized by Mrs. Cage to employ a broker to find a

purchaser for the property, and that when Mrs. Cage signed the contract of sale on December 18, 1925, she knew that Elliott Cage had agreed to pay plaintiff Eastburn a commission of 5% on the sale price of the land in the event he found a purchaser ready, willing and able to buy the property upon terms acceptable to the sellers."

They further found: "That Mrs. Cage, prior to December 18, 1925, authorized plaintiff Eastburn to find a purchaser for the property at $1500.00 per acre, and that Eastburn did find a purchaser in the person of Mrs. Hattie O. Baldwin, ready, willing and able to purchase the property upon the terms acceptable to the sellers."

The jury also found, in response to a special issue submitted by the charge, "that the failure to consummate the deal was due to the failure or refusal of defendants to make a reasonable effort to meet the objections made to the title by Mrs. Baldwin's attorney."

The first proposition presented in appellants' brief complains of the failure of the court to sustain the general demurrer, on the ground that the petition fails to show that the contract sued on was one that a married woman was authorized to make and bind her separate estate thereby.

This proposition cannot be sustained, because the petition alleges that Mrs. Cage made the contract for the benefit of her separate estate and that her estate would have received benefit therefrom in the profits accruing thereto by the sale of the property at a price in excess of its costs to the estate.

The authority of a married woman to make a contract of this kind is expressly upheld in the cases of Williams v. Doan (Tex. Civ. App.) 209 S. W. 761, and Carter v. Mills (Tex. Civ. App.) 9 S.W.(2d) 470. Any conflicts that may have previously existed in the decisions on this question were put at rest by the opinion of our Supreme Court in the case of Gohlman, Lester & Co. v. Whittle, 114 Tex. 560, 273 S. W. 808, 812. In that case the validity of an agreement of a married woman to furnish supplies for tenants, to whom her husband as her agent had leased her lands, was attacked as unauthorized. In deciding this question the Supreme Court says: "She could not have exclusive power to rent her separate lands unless she had authority to fix the terms of the rental contracts. In consideration of the promise of a portion of the crops and the refund of necessary advancements, she could grant a binding lease and incur an obligation to make advancements. * * * The husband has been made as impotent as the wife formerly was in matters pertaining to renting the wife's separate lands and collecting and disposing of rents of such lands, including the enforcement of all essentially incidental contractual obligations. This means that the husband acts lawfully in such matters only to the extent of his

derivative power from his wife; that is, as her authorized agent. The wife has here succeeded to the authority formerly confided to the husband."

It is obvious that the exercise of the power and authority of a married woman to manage and dispose of her separate property would be incomplete and often impotent if as an incident thereto she was not authorized to contract for assistance in such matters. Such authority cannot be denied her under the holding of the Supreme Court in the case just cited, and its existence is necessarily recognized by the decisions in the case of Whitney Hardware Co. v. McMahan, 111 Tex. 242, 231 S. W. 694, and Cauble v. Refining Co., 115 Tex. 1, 274 S. W. 120.

▮ Under her third proposition appellant contends:

"That the Court's refusal to instruct a verdict in favor of Mrs. Cage was error because the uncontroverted evidence showed that the sale was not consummated on account of the fact that Mrs. Baldwin would not accept a deed from Elliott Cage and Mrs. Roene Cage covering the children's equitable interest in the land, although the trust under which Mr. and Mrs. Cage held the money invested for the children and the land purchased with that money was not contained or declared in the conveyance to the trustees, and such a conveyance did not disclose the names of the beneficiaries, for which reason a conveyance from Elliott Cage and Mrs. Cage would have vested in Mrs. Baldwin a good title to the children's equitable interest in the land. This proposition is submitted under the First Assignment of Error.

"The Nelms Investment Company conveyed this land to Elliott Cage and Mrs. Roene Cage for a recited consideration of $44,000.00. $5,000.00 of the consideration was paid out of trust funds which Mr. and Mrs. Cage held in their possession as trustees for their children. Mr. and Mrs. Cage held title to 5/44 of the land in trust for the two children and the trust under which they held the money and the land was not contained or declared in the Nelms deed, which also did not disclose the names of the beneficiaries.

"Appellant contends that under the 1925 act, article 7425a, Vernon's Ann. Civ. St., a deed signed by him and Mrs. Cage would convey a good title to the interest they held in trust for the children. Appellants offered to execute such deed with warranty of title. Mrs. Baldwin's attorney declined absolutely to accept such a deed. Elliott Cage, Jr., one of the beneficiaries, did not come of age until the latter part of September, 1927. He was less than 19 and one-half years old when the Baldwin contract was signed. Mrs. Baldwin's attorney suggested that the disabilities of Elliott Cage, Jr., be removed and that the defendants should secure a deed from him, or that a guardian be appointed for him and they acquire his interest by guardian's deed. He stated very positively that, regardless of all other questions involved, he would not have accepted said title without a deed divesting Elliott Cage, Jr., of his title in one of these ways."

Prior to his employment of appellee, Elliott Cage had executed and recorded a declaration of trust showing that he had no interest in the property and that it was owned jointly by his wife, as her separate property, and their minor children. Mrs. Baldwin had both actual and constructive notice of the interest of the minors in the land at the time the deed from Mr. and Mrs. Cage was offered her. With such knowledge on her part she could not have acquired title to the minors' interest in the land by the offered deed. The cited article of the statute cannot be construed as making the deed of the trustees in these circumstances pass the title of the minors.

The contract of sale which was duly executed by Mr. and Mrs. Cage and Mrs. Baldwin, after reciting that Elliott Cage and wife had agreed to sell the property involved in this controversy to Mrs. Baldwin for the price of $1,500 per acre, and setting out the terms of payment by Mrs. Baldwin of the full consideration of $66,000, contains the following provisions:

"The conveyance is to be by deed of general warranty in the usual form to be executed by the sellers. All back taxes and taxes for the year 1925 to be paid by the sellers. All other taxes to be paid by the purchaser.

"The sellers are to furnish a complete abstract of title within a reasonable time. The purchaser to be allowed thirty (30) days after the delivery of the abstract in which to examine same and consummate the purchase. If any valid objection to the title is found the seller is to have thirty (30) days after notice to them in writing to such objection in which to remove same.

"The purchasers have the privilege of waiving objections to the title.

"For and in consideration of the agreement thereby made by the sellers the purchasers have paid to the sellers the sum of twenty-five hundred ($2500.00) dollars, which is to be held in escrow by the Guardian Trust Company as earnest money, and which is to become part of the purchase money if the sale is complete as herein contemplated.

"In case any valid objection to the title is found and written notice thereof given to the sellers within the time above limited for the examination of the title and the sellers shall fail to remove the same within the time allowed as above for that purpose, the said earnest money shall be returned to the purchasers and this agreement shall be of no further force and effect.

"If the purchaser shall fail to complete the purchase within the time limited for the examination of title, or in the event of valid objection to the title within five (5) days after notice that such objection has been removed, she shall forfeit her rights under this agreement and the earnest money shall become the property of the sellers, and F. P. Eastburn equally as liquidated damages."

This contract contains no agreement on the part of Mrs. Cage to accept the $2,500 liquidated damages in satisfaction of all her rights under the contract, and as we interpret the opinion of our Supreme Court in the case of Moss & Raley v. Wren, 102 Tex. 568, 113 S. W. 739, 120 S. W. 847, in the absence of such an agreement the contract is not a mere option, but may specifically be enforced against the defaulting party, notwithstanding its provision for liquidated damages for its breach.

It is not material that the contract may not have been specifically enforceable against Mrs. Cage. If appellees procured a contract of sale on terms satisfactory to appellant which was binding upon Mrs. Baldwin, and the sale was not consummated because of the failure of appellant to comply with the terms of the contract, they would be entitled to the agreed compensation for their services. Milliken v. Townsend (Tex. Com. App.) 16 S. W.(2d) 259; Karr v. Stevens (Tex. Civ. App.) 297 S. W. 290; Levy v. Dunken Realty Co. (Tex. Civ. App.) 179 S. W. 679.

A clear and well-considered statement of the rule generally applied here is found in the opinion of Judge Estes in the case of Preston v. Postel (D. C.) 300 F. 134.

We agree with appellant in the proposition that Mrs. Cage was not authorized to make a contract binding upon her separate estate to pay appellees a commission for effecting a sale of land belonging to her children, nor was she authorized to make such a contract to procure for the purchasers the title of the children in the land. Her power to employ a broker to assist her in disposing of her interest in the land for the benefit of her separate estate, which we have held to be a necessary incident of her exclusive right to manage and dispose of her property, cannot be extended to authorize her to bind her separate estate to pay appellees commissions on the sale of her children's interest in the land. This conclusion requires that the judgment against her and her separate estate for such commissions be reversed and judgment here rendered in her favor for these commissions.

Unless the purchasers were willing to accept her conveyance of only her interest in the land at the pro tanto amount of the agreed price, she could not be held liable to appellees for any commissions, because both appellees and the purchaser knew when the contracts with her were made that her children owned an interest in the land, and must be held charged with knowledge of her want of legal authority to make a contract for the sale, or payment of commissions for procuring a sale of such interest that would bind her separate property.

The main objection to the title offered by appellant was her want of authority to convey the interest of her children. The purchaser did not offer to accept a deed to her interest, and she made no offer of such deed. It may be reasonably inferred from the record that neither she nor the purchaser was willing that the contract of sale be only consummated as to her interest in the land. If this was conclusively shown to have been the attitude of the purchaser, appellees are not entitled to any recovery. This issue does not seem to have been fully developed by the evidence in the record, and for that reason we have concluded not to render judgment against appellees for commissions on the contract price of Mrs. Cage's interest in the land, but to remand the cause for new trial upon that issue.

If any of the numerous remaining propositions contained in appellants' brief present any error, it is not deemed material, or not such as is likely to occur upon another trial.

Judgment will here be entered as above indicated.

Reversed and rendered in part, and reversed and remanded in part.

On Motions for Rehearing.

Upon consideration of appellants' motion for rehearing and a re-examination of the record, we have reached the conclusion that the evidence conclusively shows that neither Mrs. Baldwin nor the appellants under their contract of purchase and sale contemplated the purchase of less than the entire tract of land, and neither of them were willing to consummate the contract for only Mrs. Cage's interest in the land.

Upon this state of facts the only ground upon which a portion of the judgment was remanded for a new trial by our main opinion is untenable, and appellants' motion for rehearing as to that portion of our judgment must be granted.

After fully considering appellees' motion for rehearing, we feel constrained to adhere to the conclusions expressed in our former opinion that Mrs. Cage was not authorized to make a contract binding upon her separate estate to pay appellees' commission for obtaining a purchaser ready, willing, and able to buy the interest of her minor son in the property, and appellees knowing of the interest at the time their contract for procuring a purchaser was made, and being charged with knowledge of Mrs. Cage's want of authority to make a contract binding upon her

separate estate to pay appellees a commission for obtaining such purchaser, cannot recover such commission. Berg v. San Antonio Street Ry. Co., 17 Tex. Civ. App. 291, 42 S. W. 647, 43 S. W. 929; Id., 49 S. W. 921; Montgomery v. Amsler, 57 Tex. Civ. App. 216, 122 S. W. 307; Willson v. Crawford, 61 Tex. Civ. App. 580, 130 S. W. 227; Perkins v. Camozze (Tex. Civ. App.) 246 S. W. 735; Realty Co. v. Small (Tex. Civ. App.) 251 S. W. 306; Carter v. Harrell & Walker, 55 Tex. Civ. App. 268, 118 S. W. 1139.

It follows that appellees' motion for rehearing must be overruled.

Our judgment reversing the judgment below in part will be set aside, and the judgment of the trial court reversed and rendered in favor of appellants in its entirety, and it has been so ordered.